UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

TAMPA BAY MARINE TOWING　　　　　　　　CASE NO: 8:20-bk-01418-CED
 & SERVICE, INC.　　　　　　　　　　　　　　CHAPTER 11

　　　　Debtor.
_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

COMES NOW, the Debtor, TAMPA BAY MARINE TOWING & SERVICE, INC. (the "Debtor"), by and through undersigned counsel, and pursuant to Administrative Order TPA-2005-2 hereby files this Chapter 11 Case Management Summary as follows:

1.　　This instant Chapter 11 Case was filed on February 19, 2020. The Debtor operates as a Debtor-In-Possession pursuant to 11 U.S.C. § 101(51D) and operates under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.　　The Debtor is a Florida corporation, owned by Kathleen C. Moreno ("Ms. Moreno"), who owns 51% of the Debtor's outstanding shares, and Mrs. Moreno's spouse, Raul Moreno (Mr. Moreno), who owns 49% of the Debtor's outstanding shares. The Debtor operated as a franchisee of Sea Tow Services International, Inc. ("STI") with its principal place of business and assets located at 3300 39th Ave, St. Petersburg, FL 33712.

3.　　STI is known as "your road service at sea", has over 100 franchises throughout the United States and Europe and is "the recognized leader in marine assistance", according to its website, www.seatow.com/about/franchise-ownership.

4.　　The Debtor operated as an STI franchisee from April 2015 through October 2019. STI, through its franchisees, offers paying recreational and small commercial boaters ("Sea Tow

Members") certain services through a membership business model, similar to what AAA does with vehicle owners.

5. There are two basic membership levels for Sea Tow Members, "Gold Card" at $179 per year, and the "Lake Card" at $119 per year. Most Sea Tow Members choose the Gold Card and join at various times of the year. However, most Sea Tow Members join during the "boating season", which begins in March, along-side major regional boat shows throughout the country and ends in August. Sea Tow Members join and renew on an annual basis; therefore, cash flow is most scarce from September through February, which, in part, lead to the Debtor's current financial situation.

6. The Debtor's largest creditor is Synovus Bank ("Synovus") who is owed approximately $588,000. In April 2019, Synovus filed an action for foreclosure for past due payments on debt. The lawsuit was brought in Pinellas County, Florida and was designated case number 19-002490-CI. Synovus has a blanket lien via UCC-1 filing(s) and a pending judgement for foreclosure on the Debtor's assets. The value of the Debtor's assets encumbered by the Synovus lien is approximately $125,000.

7. As a result of the Synovus lawsuit, STI terminated the Debtor's franchise agreement. STI then entered into a management agreement with Tampa Bay Marine Recovery, Inc ("TBMR") to run the business of the Debtor. TBMR is owned by Erich Jaeger, who is the son of Kathleen Moreno. TBMR and STI entered into an arm's length transaction wherein TBMR would be the management company conducting the daily operations of the Debtor, which includes collecting member funds and remitting them to STI. The Debtor then entered into an equipment leasing agreement with TBMR. At this time, all the Debtor's equipment is leased by TBMR. TBMR pays $3508 per month on the lease agreement. The Debtor then uses the lease funds to

make regular monthly payments to secured creditors Ford Motor Credit and System Service Technology. The Debtor anticipates that it will reject the current lease agreement with TBMR and enter into a new agreement that increases the amount of the lease payments so that the Debtor can service its debt and reorganize. The lease payments from TBMR is the only revenue the Debtor has been receiving since September 2019 when STI began holding member funds from the Debtor. Prior to the revocation of the franchise the Debtor's revenue consisted of income from memberships, marine towing for those that do not have memberships, marine salvage, and marine recovery of boats.

8. The Debtor has not received member funds from STI since September 2019 when STI began holding the funds as a result of the Synovus lawsuit. The Debtor ran on the personal savings of the Mr. and Mrs. Moreno, salvages and non-member jobs until November 11, 2019 when STI officially revoked the franchise and put TBMR in place as the management company to the run the business operations of the Debtor. However, the Debtor continued to service members during that time with no compensation or way of recovering funds. STI releases member funds to TBMR twice a month and TBMR operates as the de facto franchise owner.

9. Prior to the revocation of the franchise by STI in September 2019, the Debtor had approximately $795,000 in gross revenues and total expenses of $808,593.68. In 2018 The Debtor had $1,137,169 in gross revenues and a cost of goods sold of $1,136,669. In 2017 the Debtor had $1,061,576 in gross revenues and a cost of goods sold of $1,058,986.

10. As of the petition date the Debtor does not owe employee funds and does not have any employees of its own. The management company, TBMR has approximately 8 employees and is current on all wages and taxes associated therewith.

11. It appears the management company, TBMR, is doing well and generating revenue. The Debtor is considering leaving the management company in place and reorganizing by restructuring its agreement with the management company so the Debtor can service debt through the Chapter 11 Plan of Reorganization.

12. The emergency nature of Debtor's filing of this Reorganization arises from the filing of a motion for summary judgment by Synovus and the resulting hearing that occurred on February 18, 2020, the day before the filing of this case.

13. As of the date of filing the Debtor does not owe any priority debts. The Debtor has two other secured creditors, who are secured by purchase money security interests, Ford Motor Credit and System Service Technology. Ford Motor Credit is secured by a 2016 Ford 350 and is owed approximately $18,300. System Service Technology is secured by six (6) outboard boat motors and is owed approximately $65,000.

14. Eugene N. Shute IV originally sold the business and holds a promissory note. Mr. Shute will likely assert an unsecured claim in the approximate of $120,000. Additionally, there are unsecured creditors that are owed about approximately $34,500.

15. The Debtor felt that bankruptcy relief was needed in order to provide the best opportunity to reorganize its debt and continue to operate.

16. The Debtor does not believe it will need DIP financing at this time, although exit financing may be a viable option. The Debtor believes it can present a successful plan of reorganization that will provide a better resolution to all parties-in-interest, rather than a liquidation.

17. The amounts owed to the three classes of creditors are as follows:

   a. Priority Creditors: $0.00

      b. Secured Creditors: $672,000 (including the claims of Synovus, Ford Motor Credit, and System Service Technology)

      c. The amount of unsecured claims (including the claim of Mr. Shute): approximately $164,000.

18.    The Debtor's assets consist of Equipment and other tangible assets. The assets are more particularly described on schedule B, which will be filed with the court as soon as practicable.

19.    Debtor reserves the right to amend this Case Management Summary as necessary.

Dated: February 25, 2020

> */s/ Jake C. Blanchard*
> BLANCHARD LAW, P.A.
> Jake C. Blanchard, Esquire
> Attorney for Debtor
> 1501 S. Belcher Rd. Unit 6B
> Largo, FL  33771
> Telephone:  (727) 531-7068
> Facsimile:  (727) 535-2086

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via the Court's CM/ECF Service, and/or U.S. Mail, to the United States Trustee, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602 and to those parties who receive electronic notices via CM/ECF in the ordinary course of business, on this 25th day of February 2020.

*/s/ Jake C. Blanchard*
BLANCHARD LAW, P.A.
Jake C. Blanchard, Esquire