UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

TAMPA BAY MARINE TOWING           CASE NO: 8:20-bk-01418-CED
 & SERVICE, INC.                                     CHAPTER 11

     Debtor.
_____/

**AMENDED CHAPTER 11 CASE MANAGEMENT SUMMARY**

COMES NOW, the Debtor, TAMPA BAY MARINE TOWING & SERVICE, INC. (the "**Debtor**" or "**TBMT**"), by and through undersigned counsel, and pursuant to Administrative Order TPA-2005-2 hereby files this Amended Chapter 11 Case Management Summary as follows:

1. This instant Chapter 11 Case was filed on February 19, 2020 (the "**Petition Date**") under Chapter 11 of the Code, Case No. 8:20-bk-01418-CED, and remains pending in the United States Bankruptcy Court, Middle District of Florida, Tampa Division (this "**Case**").

2. The Debtor is a "small business debtor" pursuant to 11 U.S.C. §101(51D) of United States Bankruptcy Code (the "**Code**").

3. The Debtor operates as a Debtor-In-Possession pursuant to § 1107(a) of the Code.

4. On the Petition Date, Debtor elected to operate under Chapter 11, Subchapter V of the Code ("**Sub. V**").

5. Dr. Ruediger Mueller is the appointed Chapter 11 Trustee pursuant to Sub. V.

**BACKGROUND OF THE DEBTOR**

6. The Debtor is a Florida corporation registered under the state of Florida, Division of Corporations by filing its Articles of Incorporation on July 25, 2000.

7.      The Debtor's principal place of business and assets are located at 3300 39th Ave., St. Petersburg, FL 33712.

## Debtor Purchase and Franchise Background

8.      Kathleen Moreno ("**K. Moreno**") and her husband, Raul Moreno ("**R. Moreno**") (K. Moreno and R. Moreno collectively the "**Morenos**") purchased the Debtor from Eugene N. Shute, IV ("**Shute**") for $857,500.00 pursuant to that certain Sea Tow Tampa Bay Sales & Assignment January 29, 2015 (the "**Purchase Agreement**").

9.      The Debtor has always operated as a franchisee of Sea Tow Services International, Inc. ("**STSI**" or the "**Franchisor**"). Part of the Purchase Agreement involved assignment of the franchise and the Debtor entered into that certain Franchise Agreement dated April 23, 2020 with STSI (the "**Franchise Agreement**").

10.     STSI is known as "your road service at sea" and has over 100 franchises throughout the United States and Europe. STSI through its franchisees, like the Debtor, offers paying recreational and small commercial boaters ("**Sea Tow Members**") certain services through a membership business model, similar to what AAA does with vehicle owners.

11.     Most Sea Tow Members pay about $179.00 per year and join at various times of the year ("**Member Funds**"). However, most Sea Tow Members join during the "boating season", which begins in March, along-side major regional boat shows throughout the country and ends in August. The Franchisor collects Member Funds generated by franchisees through sales and annual renewals. The Franchisor then distributes a portion of the Member Funds to franchisees after taking out their cut for franchise fees, reciprocal tow fund fees, credit card processing fees, donations, trailer care fees etc. In addition to the fees, STSI has the ability to penalize franchisees under the

Franchise Agreement. The Franchisor keeps approximately thirty percent (30%) of the Member Funds for one reason or another.

12.	The description and calculation of the fees under the Franchise Agreement seems duplicitous and the Chapter 11 Trustee and undersigned counsel for the Debtor are working with the K. Moreno towards gaining a fuller understanding of how the fees are calculated and remitted to franchisees.

13.	The Morenos financed the purchase of the Debtor by entering into two (2) separate promissory notes with Synovus Bank ("**Synovus**") for a total amount of $825,000.00. (the "**Promissory Notes**"). The Debtor is also a borrower on the Promissory Notes. The Promissory Notes were secured by two (2) security agreements (the "**Security Agreements**"). The Security Agreements encumbered all assets of the Debtor. Additionally, the Morenos mortgaged their homestead and personally guaranteed the Promissory Notes (the "**Synovus Lien**"). The Debtor's largest creditor is Synovus who is owed approximately $588,000 as of the Petition Date. The Promissory Notes are backed by the Small Business Administration.

14.	K. Moreno operated the Debtor until about November 2019, R. Moreno never had any real involvement with the Debtor but signed as a personal guarantor on the Promissory Notes along with K. Moreno.

## The Shute Dispute

15.	On August 21, 2017, Shute filed suit against the Debtor and the Morenos alleging breach of contract and unjust enrichment in the Sixth Judicial Circuit, Pinellas County, Florida, Case No. 17-005174-CI (the "**Shute Lawsuit**"). Attorney Mitchell Stein ("**Stein**") represented the Debtor and the Morenos against Shute. Stein is lead corporate counsel for STSI as well and later represented STSI against the Morenos and the Debtor.

16. The Shute Lawsuit was precipitated by a disagreement between the Morenos and Shute. The Morenos alleged, among other things, that certain assets were not titled as represented and that sales tax was not paid on those assets leaving the Debtor with the burden of paying. Additionally, the Debtor and the Morenos alleged that the former owner, Shute, failed to meet his obligations for, among other things, hands on training and failing to pay federal employment taxes that Shute was allegedly responsible for. Debtor alleges that Shute's failure to pay employment taxes due under his tenure lead to a levy against the Debtor and the Morenos.

17. With Stein as counsel, and after a default was entered against the Debtor and the Morenos, the Debtor and the Morenos entered into a settlement agreement with Shute (the "**Shute Settlement Agreement**") in order to end the Shute Lawsuit. The Shute Lawsuit was dismissed after execution of the Shute Settlement Agreement and pursuant to a stipulation signed by Stein as counsel for the Debtor and Morenos, which was filed in the Shute Lawsuit.

18. The Shute Settlement Agreement that Stein negotiated resulted in that certain promissory note wherein the Debtor is the maker and Shute is the lender in the principal amount of $138,625.00 plus $10,000 in accumulated interest, with a 7.5% interest rate along with interest of $22,261.41 being deemed earned at time of execution (the "**Shute Promissory Note**"). The Shute Promissory Note is paid through STSI from Debtor's Member Funds. Additionally, STSI guaranteed payment to Shute. The Shute Promissory Note costs the Debtor $3,351.80 monthly from its Member Funds.

19. Stein charged the Debtor $17,000 in attorney's fees plus additional interest and fees for his representation during the Shute Lawsuit.

**The Synovus Foreclosure Case**

20. In April 2019, Synovus filed an action for foreclosure on Debtor's personal property for past due payments relating to three separate notes secured with UCC-1 blanket liens. The lawsuit was brought in Pinellas County, Florida and was designated case number 19-002490-CI (the "**Synovus Foreclosure Case**").

21. Synovus has a blanket lien via UCC-1 filing(s) and a pending judgement for foreclosure on the Debtor's assets. The value of the Debtor's assets encumbered by the Synovus lien is approximately $156,000.

22. The emergency nature of Debtor's filing of this Reorganization arises from the filing of a motion for summary judgment by Synovus and the resulting hearing that occurred on February 18, 2020, the day before the filing of this case.

**STSI Revokes the Franchise Agreement due to the Synovus Foreclosure**

23. STSI alleges that it had a right under the Franchise Agreement to announce a breach as a result of the Synovus Foreclosure Lawsuit. Consequently, in September 2019, STSI announced a breach of the Franchise Agreement through its attorney, Stein, and began withholding all Membership Funds from the Debtor.

24. Withholding the Membership Funds crippled the Debtor and is the proximate cause of this Case. Additionally, Debtor-in-possession alleges the ownership of the Memberships and the Membership Funds, are property of the estate pursuant to § 541 of the Code.

25. Approximately, late October to early November 2019, STSI formally revoked and terminated the Franchise Agreement.

26. The formal date of revocation of the Franchise Agreement according to STSI is backdated to May 11, 2019, which is thirty (30) days after the Synovus Foreclosure Lawsuit was filed.

27. STSI alleges that it had the right to terminate the Franchise Agreement 30 days after the Synovus Foreclosure Lawsuit was filed pursuant to Article 16 § 16.1 of the Franchise Agreement. However, the document formally revoking the Franchise Agreement, that certain Termination and Relinquishment Agreement between STSI and the Debtor (the "**TARA**") is signed by Mitch Stein on behalf of STSI on October 28, 2019.

### The TARA

28. The TARA is an eight-page document, including boiler plate and signature pages, that Stein drafted and signed on behalf of STSI. Stein then charged the Debtor $25,000, payable to Stein's firm, Stein Law, P.C., for drafting the TARA. The fees charged by Stein were paid by K. Moreno using personal funds and cash advances from personal credit cards.

29. The terms of the TARA and the fee to Stein were non-negotiable.

30. According to the TARA, STSI alleges that the Debtor received certain money in the form of a percentage of Membership Fees and that the money is not owned by the Debtor but that it was received by the Debtor expressly as trust money to be held in trust and earned only upon expiration of the membership term(s) the fees related to. Further, STSI alleges that upon termination of the Franchise Agreement the Debtor must return the pro rata portion thereof comprising the unexpired period of said memberships as of May 11, 2019, in the amount of $567,637.87. Obviously, the legality, mechanics and calculations of that number is suspect.

31. STSI then entered into a management agreement (the "**Management Agreement**") with Tampa Bay Marine Recovery, Inc ("**TBMR**") to run the business of the Debtor. TBMR is

owned by Erich Jaeger, who is the son of Kathleen Moreno ("**Jaeger**"). Jaeger worked as a manger for the Debtor until TBMR took over the business operations.

32. Stein then charged TBMR $25,000, payable to Stein's firm, Stein Law, P.C., for drafting the Management Agreement, which is being paid by the Debtor's Member Funds.

33. The Debtor then entered into an equipment leasing agreement with TBMR (the "**Equipment Lease Agreement**"). At this time, all the Debtor's equipment is leased by TBMR. TBMR pays $3508 per month pursuant to the Equipment Lease Agreement.

34. The Debtor then uses the lease funds to make regular monthly payments to secured creditors Ford Motor Credit and System Service Technology. The Debtor anticipates that it will reject the current lease agreement with TBMR and enter into a new agreement that increases the amount of the lease payments so that the Debtor can service its debt and reorganize. The lease payments from TBMR is the only revenue the Debtor has been receiving since September 2019 when STSI began holding member funds from the Debtor. Prior to the revocation of the franchise the Debtor's revenue consisted of income from memberships, marine towing for those that do not have memberships, marine salvage, and marine recovery of boats.

35. The Debtor has not received member funds from STSI since September 2019 when STSI began holding the funds as a result of the Synovus lawsuit. The Debtor ran on the personal savings of the Morenos, salvages and non-member jobs until November 11, 2019 when STSI officially revoked the franchise under the TARA and put TBMR in place as the management company to the run the business operations of the Debtor. However, the Debtor continued to service members during that time with no compensation or way of recovering funds.

36. STSI releases member funds to TBMR twice a month and TBMR operates as the de facto franchisee. STSI maintains that TBMR must pay another franchise fee of $725,000 in order to remain as the de facto franchisee.

### Financial Summary of the Debtor

37. Prior to the withholding of Member Funds by STSI in September 2019, the Debtor had approximately $795,000 in gross revenues and total expenses of $808,593.68. In 2018 The Debtor had $1,137,169 in gross revenues and a cost of goods sold of $1,136,669. In 2017 the Debtor had $1,061,576 in gross revenues and a cost of goods sold of $1,058,986.

38. As of the petition date the Debtor does not owe employee funds and does not have any employees of its own. The management company, TBMR has approximately 8 employees and is current on all wages and taxes associated therewith.

39. It appears the management company, TBMR, is doing well and generating revenue. The Debtor is considering leaving the management company in place and reorganizing by restructuring its agreement with the management company so the Debtor can service debt through the Chapter 11 Plan of Reorganization.

40. As of the date of filing the Debtor does not owe any priority debts. The Debtor has two other secured creditors, who are secured by purchase money security interests, Ford Motor Credit and System Service Technology. Ford Motor Credit is secured by a 2016 Ford 350 and is owed approximately $18,300. System Service Technology is secured by six (6) outboard boat motors and is owed approximately $65,000.

41. Eugene N. Shute IV originally sold the business and holds the Shute Promissory Note. Shute will likely assert an unsecured claim in the approximate of $120,000 or more. Additionally, there are unsecured creditors that are owed about approximately $34,500.

42. The Debtor felt that bankruptcy relief was needed in order to provide the best opportunity to reorganize its debt and continue to operate.

43. The Debtor does not believe it will need DIP financing at this time, although exit financing may be a viable option. The Debtor believes it can present a successful plan of reorganization that will provide a better resolution to all parties-in-interest, rather than a liquidation.

44. The amounts owed to the three classes of creditors are as follows:

    a. Priority Creditors: $0.00

    b. Secured Creditors: $672,000 (including the claims of Synovus, Ford Motor Credit, and System Service Technology)

    c. The amount of unsecured claims (including the claim of Mr. Shute): approximately $164,000.

45. The Debtor's assets consist of Equipment and other tangible assets. The assets are more particularly described on schedule B filed in this case at Doc. No. 31.

46. All documents referred to in this Amended Case Management Summary are available upon request.

47. Debtor reserves the right to amend this Case Management Summary as necessary.

Dated: April 7, 2020.

                                             */s/ Jake C. Blanchard*
                                             BLANCHARD LAW, P.A.
                                             Jake C. Blanchard, Esquire
                                             Attorney for Debtor
                                             1501 S. Belcher Rd. Unit 6B
                                             Largo, FL  33771
                                             Telephone:  (727) 531-7068
                                             Facsimile:  (727) 535-2086

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via the Court's CM/ECF Service, and/or U.S. Mail, to the United States Trustee, Timberlake Annex, Suite 1200, 501 E Polk Street, Tampa, FL 33602 and to those parties who receive electronic notices via CM/ECF in the ordinary course of business, on this 7th day of April, 2020.

> */s/ Jake C. Blanchard*
> BLANCHARD LAW, P.A.
> Jake C. Blanchard, Esquire